SCARBOROUGH, *contra.*


## SULLIVAN *et al.*, *vs.* MERCHANTS & PLANTERS' BANK *et al.*

In Equity, from Sumter county.    Decided by Judge ALLEN, at Chambers, 17th April, 1860.

John E. Sullivan, Thomas C. Sullivan and John V. Price filed their bill in equity, alleging that, on the 5th day of February, 1858, John E. Sullivan made his promissory note for $1,698 06, payable to the order of John V. Price, sixty days after date, at the Merchants and Planters' Bank of Savannah, which note was endorsed by said Price for the accommodation of said Sullivan; that on maturity said note was sued to judgment in favor of said bank; there was a stay of the *fi. fa.*, on which Thomas C. Sullivan became the security. At the April Term, 1860, a rule absolute was taken against the sheriff of said county for failure to make the money due on the *fi. fa.* against said parties.

It is further alleged, that since said judgment and rule ab-

solute, the complainants have been informed that said bank had no title to or interest in said note, but that said note really belonged to Patten, Hutton & Co., of Savannah, who, it is charged, had fraudulently caused the suit to be brought in the name of said bank, in order to prevent the maker and endorser thereof from setting up certain legal and equitable defences thereto, and that said complainants never ascertained or had any knowledge of this fact until the 13th day of April, 1860. It is further alleged, that the said Patten, Hutton & Co. were engaged, in 1856 and '57, as Warehouse and Commission Merchants and Cotton Factors, in Savannah, Georgia, and that in order to get the patronage of complainant, John E. Sullivan, who was about to engage in the business of buying and selling cotton, at Americus, they agreed, in consideration that said complainant would send all his cotton to them at Savannah for sale, they would perform all the duties and assume all the liabilities of consignees towards him, and in pursuance of such agreement, complainant purchased large quantities of cotton, and shipped the same to them in 1856 and '57, said cotton amounting to about one thousand bales. It is charged that said Patten, Hutton & Co. sold the most of said cotton as soon as they received it, and long before the maturity of the bills drawn thereon, thus depriving complainant of the benefit of the rise in the cotton market; also, that they sold said cotton at about half a cent under the average price for cotton at that time, in utter disregard of complainant's rights in the premises, and that they sold said cotton in the manner aforesaid, either to meet their own large pressing liabilities or to defraud complainant, and that thereby he has been injured and damaged three thousand dollars. The note was given to meet the draft of complainant then in the Bank of Savannah, and said Patten, Hutton & Co. fraudulently, as is alleged, refused to apply said note as was agreed upon. It was given as part of the cotton transactions, but not upon a final settlement of them.

The prayer of the bill is for discovery, account and settlement, and for an injunction to restrain the proceedings at law until a decree of the Court can be had in the premises.

The Court refused to sanction the bill on this state of facts, and counsel for complainants excepted.

SULLIVAN & BROWN, HAWKINS, for plaintiffs in error.

SCARBOROUGH, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

The Merchants & Planters' Bank obtained several judgments against John E. Sullivan, as maker, to which Thomas C. Sullivan became security, on a stay of the execution, and John V. Price, as endorser, on a note, dated 5th February, 1858, made by John E. Sullivan, and payable to the order of John V. Price, at The Merchants & Planters' Bank, in Savannah, for the sum of $1,698 06, and endorsed by John V. Price. From these judgments several executions issued against the defendants, and were placed in the hands of Samuel Dawson, the Sheriff of Sumter county, for collection. At the term of the Court to which the executions were returnable, the plaintiffs moved a rule against the sheriff to show cause why he had not collected the money, and why he should not pay over the amount due on the same to the plaintiff. The defendants filed their bill against the plaintiff in execution and against the firm of Patten, Hutton & Co., praying an injunction against the collection of the executions, and asking an account as to Patten, Hutton & Co. The Court refused the injunction. To this refusal the defendants, or complaints, excepted. This forms the ground of error in one bill of exceptions.

The defendants then asked to be made parties to the rule against the sheriff, and tendered an issue, setting up the same facts as charged in the bill. The sheriff also made a special showing, amounting, in substance, to this: That he was about to make the money, but that defendants "notified him that they intended to file their bill in equity, and he supposed the injunction would be sanctioned;" and he submits "that he has acted in good faith, and only failed to make the money because he thought, under the facts, as they are stated in the bill to exist, the Court would enjoin the *fi. fas.*"

The Court overruled the showing, and made the rule absolute against the sheriff for the amount due on the executions. To which decision the sheriff excepted, and that forms the grounds of another bill of exceptions. The two were tried together.

1. Was the Court right in refusing the injunction? We

Dawson *et al.*, *vs.* The Merchants' & Planters' Bank.

think so, most unquestionably. The facts set out in the bill. would have been no defense to the original suit, had it been pending in the name of Patten, Hutton & Co., as plaintiff's, instead of the Merchants & Planters' Bank. The grounds of the equity of the bill are that the cotton was sold before the maturity of the drafts drawn against the cotton, thereby depriving the complainants of the benefit of the rise of the market, and no rise in the market prices is alleged; besides, in the absence of instructions, the acceptors had the right to sell the cotton on its arrival, for their reimbursement or protection, whether the bills were mature or not; in fact, it was their duty to do so. Another ground is, that the cotton was sold for about a half cent under the average prices for cotton at that time. That might be true, and yet this cotton be sold for every farthing it was worth. But what excuse does this bill set up for going behind a settlement of all these transactions? This note sued on was given in settlement for the balance due by the complainant, growing out of the transactions between the parties, in which the equities originated. Was the complainant surprised or taken advantage of in the settlement? The bill does not so charge; on the contrary, it is silent on that subject.

2. Was the Court right in overruling the showing, and in making the rule absolute against the sheriff for the amount due on the executions? Most certainly. It was the duty of the sheriff to have made the money. He neglected that duty, and was liable to this rule. What the defendants' equities were, was none of his business. He had no right to judge or think anything about them. It was his duty to obey and execute the process of the Court, and when he failed to do so, he was in contempt.

Judgment affirmed.